UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re
    JAMES J. BIELMEIER,                         BK 21-10343 CLB


                Debtor.                     DECISION & ORDER
------------------------------------------------------

    WILLIAM WELSH
    ANGELIKA WELSH,

                Plaintiffs,              AP 21-01024 CLB

       v.

    JAMES J. BIELMEIER,

                Defendant.
------------------------------------------------------


                    Hodgson Russ LLP
                    Hugh M. Russ, III, Esq., of counsel
                    James J. Zawodzinski, Jr., Esq., of counsel
                    140 Pearl Street
                    Suite 100
                    Buffalo, New York 14202
                    Attorneys for Plaintiffs

                    Baumeister Denz LLP
                    Arthur G. Baumeister, Jr., Esq., of counsel
                    174 Franklin St., Suite 2
                    Buffalo, New York 14202
                    Attorneys for Defendant


Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

    The purchasers of a condominium oppose the discharge of their claim against

the sole director and officer of a general contractor which allegedly misappropriated moneys that were advanced for the cost of construction. The dispute is further complicated by the fact that the buyers also provided construction financing. This decision requires our consideration of three issues: whether the liability of a general contractor extends also to its officer and director; whether any such liability is a trust obligation not subject to discharge; and the extent to which a deed in lieu of foreclosure satisfies claims against the grantor.

On April 16, 2019, Bielmeier Builders, Inc., agreed to sell, and William and Angelika Welsh agreed to purchase a residential condominium unit that was to be built on property commonly known as 5397 Waterlefe in the Town of Clarence, New York. Subject to adjustments for changes in plan specifications, the price was set at $650,000. The Purchase Agreement contemplated that Bielmeier Builders would transfer title "on or about November 15, 2019 (the 'Closing Date') or on such other date to be specified by Seller by written notice to Purchaser." Ten thousand dollars of the purchase price was paid upon signing of the contract. To finance the ongoing costs of construction, the Welshes agreed to loan $552,500 to the seller under the terms and conditions of a Financing Agreement that is also dated as of April 16, 2019. After taking credit for any sums advanced under the Financing Agreement, the Welshes would pay the remaining balance of the purchase price upon delivery of the deed.

The Financing Agreement contemplated the further execution of a Note, a Mortgage and a Building Loan Agreement, all of which were signed on May 30, 2019. These documents specify that Mr. and Mrs. Welsh would advance funds in six draws: $130,000 at the recording of a mortgage and the filing of the building loan agreement;

$126,750 upon completion of the foundation; $105,625 upon substantial completion of the roof; $84,500 upon substantial completion of the drywall; $63,375 upon substantial completion of the trim; and $42,250 within 14 days after Bielmeier Builders received a temporary or final certificate of occupancy. In addition, the Welshes agreed to pay the mortgage tax and various recording fees in the total amount of $5,640.

At the time that they executed their initial agreements, the parties recognized the possibility of change orders and upgrades from the construction plans and specifications. Paragraph 3 of the Purchase Agreement states that such changes "shall be made only if agreed to in writing by Seller and Purchaser." Paragraph 1 of the contract provides that "[u]pon the signing of any agreement and/or request for extra and/or change order work, the costs therefore shall be immediately due and payable."

By November 21, 2019, William and Angelika Welsh had advanced $592,069 toward the purchase and construction of their new home. Although the projected Closing Date had passed, the building was far from complete. Concerned about the lack of progress, the Welshes met with James J. Bielmeier, the president and owner of Bielmeier Builders, Inc. In their conversations, Mr. Bielmeier acknowledged that payments had been commingled with other accounts and had been used in part to finance other construction projects. Some of the advances under the building loan were requested and received even though the builder had not completed the targeted stage of construction. When the Welshes then refused to make any further payments, Bielmeier Builders agreed to give to the Welshes a deed in lieu of the foreclosure of the building loan mortgage.

Mr. and Mrs. Welsh accepted title to 5397 Waterlefe on December 23, 2019.

They then hired a substitute builder who would eventually finish the project. Nonetheless, the Welshes claim to have suffered substantial damages. Alleging breach of contract and other causes of action, they commenced litigation in state court in November of 2020 against Bielmeier Builders, Inc., James J. Bielmeier and others. However, Bielmeier Builders and James J. Bielmeier each filed a petition for relief under Chapter 7 of the Bankruptcy Code on April 6, 2021. Later that same month, in each of the two bankruptcy cases, the Welshes filed a proof of claim for $ 446,429. Then on June 29, 2021, William and Angelika Welsh commenced the present adversary proceeding against James Bielmeier to determine the dischargeability of that debt.

In their complaint, the Welshes assert that their claim against James Bielmeier is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), § 523(a)(2)(B) and § 523(a)(4). Alternatively, the complaint asks that a discharge be denied under 11 U.S.C. § 727. Mr. Bielmeier answered the complaint on August 21, 2021. After completion of discovery, the matter became the subject of a trial on May 14, 2024. As stated on the record at the trial, this Court found no basis for a denial of discharge under section 727. We reserved decision, however, on that portion of the complaint which seeks a determination under section 523 that various claims against the debtor are not subject to discharge.

## Discussion

Article 3-A of the New York Lien Law establishes a trust whose corpus consists of any funds that Bielmeier Builders, Inc., may have received for the improvement of real property. To this effect, Section 70(1) of the Lien Law provides as follows:

> "The funds described in this section received by an owner for or in connection with an improvement of real property in this state, including a home improvement loan, or received by a contractor under of in connection with a contract for an improvement of real property, or home improvement . . . shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter."

N.Y. LIEN LAW § 70(1)(McKinney 2016). Subdivision 5 of section 70 specifies further that trust assets include "funds received . . . (a) under a building loan contract; [and] (b) under a building loan mortgage or a home improvement loan." Pursuant to section 71 of the Lien Law, these trust assets "shall be held and applied for payment of the cost of improvement." N.Y. LIEN LAW § 71(1)(McKinney 2016).

Bielmeier Builders, Inc., violated its obligations as trustee by commingling and misapplying funds from the Welshes for the construction of the home at 5397 Waterlefe. Under New York law, liability for this breach of trust extends both to the corporation and to its officers. *Fleck v. Perla*, 40 A.D.2d 1069 (Fourth Dept., 1972); Ippolito *v. TJX Dev., LLC.*, 83 AD3d 57 (Second Dept., 2011). The character of this misappropriation is further defined in Lien Law § 79-a(1):

> "Any trustee of a trust arising under this article, and any officer, director or agent of such trustee, who applies or consents to the application of trust funds received by the trustee as money or an instrument for the payment of money for any purpose other than the trust purposes of that trust, as defined in section seventy-one, is guilty of grand larceny and punishable as provided in the penal law if (a) such funds were received by the trustee as owner . . . and they were applied prior to the payment of all trust claims as defined in such article three-a, arising at any time . . ."

Bielmeier Builders, Inc., was the owner of 5397 Waterlefe at the time that the Welshes advanced funds for the construction of a home. Pursuant to New York Lien Law § 79-a, both the corporation and its sole officer, James J. Bielmeier, committed larceny and were liable to Mr. and Mrs. Welsh for any misapplied funds.

Section 523(a) of the Bankruptcy Code states that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Inasmuch as the New York Lien Law defines larceny to include the misapplication of funds paid by the Welshes, the resulting liability of James J. Bielmeier is not dischargeable.

Having found that the Welshes have a claim that is at least partially non-dischargeable, this Court may also determine and award a money judgment. *See In re Ridsdale (Hi-Qual Roofing & Siding Materials, Inc. v. Ridsdale)*, 286 B.R. 238 (Bankr. W.D.N.Y. 2002). Hence, we now turn to a calculation of the non-dischargeable liability.

Prior to trial, the parties stipulated "that Plaintiffs' claims for damages in this adversary proceeding be, and the same hereby are, limited to recovery of amounts Plaintiffs paid to Bielmeier Builders, Inc. in an amount no greater than $446,429.00 and the items set forth at paragraph 78 of the Complaint." Paragraph 78 sought the recovery of damages caused by delay in completion of the home. Initially, we turn our attention to the claim for $446,429. As explained at trial, this sum consists of the following advances that William and Angelika Welsh made to or at the direction of Bielmeier Builders:

    1.    On April 17, 2019, the buyers made three payments totaling

$99,350, on account of moneys due under three change orders.

   2.   On June 6, 2019, the buyers paid $126,750, that being the advance due under the building loan agreement upon completion of the foundation.

   3.   On August 22, 2019, the buyers paid $105,625, that being the advance due under the building loan agreement upon substantial completion of the roof.

   4.   On September 28, 2019, the buyers paid $19,154 on account of moneys due under multiple change orders.

   5.   On October 13, 2019, the buyers paid $84,500, that being the advance due under the building loan agreement upon substantial completion of the drywall.

   6.   On November 21, 2019, the buyers paid $11,050 on account of moneys due under Change Order # 13.

These payments can be categorized into two groups. The first were advances made under the building loan agreement on June 6, August 22 and October 13 of 2019. Upon their receipt by Bielmeier Builders, Inc., these three disbursements in the total amount of $316,875 became trust funds and would have created a non-dischargeable debt but for the fact that they are the subject of a settlement. On December 23, 2019, the Welshes accepted a deed in lieu of the foreclosure of the mortgage that provided security for the building loan agreement. The deed states that it "is being given in lieu of foreclosure and in full satisfaction" of the balance due on the mortgage. Upon the filing of the deed in lieu of foreclosure, the parties also submitted Form RP-5217-PDF, as required by the New York State Department of Taxation and

Finance.  Signed by all parties, this form confirms a full sale price of $446,875.  This sum represents the exact total of all building loan advances, including the disbursements of June 6, August 22 and November 21, as well as the initial outlay of $130,000 for real estate acquisition.  Because the Welshes have thereby settled any claim on account of building loan advances, judgment for this component of the claim is denied.

The second group of payments consists of advances on account of change orders.  Made on April 17, September 28 and October 13, these payments totaled $129, 554.  Unlike advances under the building loan agreement, however, the change orders were not the subject of settlement by deed in lieu of foreclosure.  At trial, the Welshes satisfied their burden to show that the funds were commingled and misapplied.  In his defense, Bielmeier asks that the Court give credit for significant expenditures made in connection with the construction project.

Paragraph 3 of the Purchase Agreement addresses the issue of change orders, as follows:

> "Seller reserves the right to make such changes and/or substitutions in the construction of the Unit as may be necessary because of the unavailability of materials through Seller's ordinary and usual sources of supply or as may be required by law provided the changes are of equal or better quality.  Any other changes in construction of the Unit which are not in accordance with the plans and specifications shall be made only if agreed to in writing by Seller and Purchaser and Seller shall be entitled to payment in addition to the sum set forth above for the performance of any 'extras' or changes not included in such plans and specifications."

Consistent with this provision, the Welshes and Bielmeier executed separate

agreements for each of the change orders that is now at issue.  Consequently, those change orders are subject to the direction of section 70 of the New York Lien Law: "The funds received by a contractor or subcontractor and the rights of action with respect thereto, under or in connection with each contract or subcontract, shall be a separate trust and the contractor or subcontractor shall be the trustee thereof."  N.Y. LIEN LAW § 70(2)(McKinney 2016).  As separate agreements, therefore, each change order imposed an obligation to apply the funds toward the designated change.

In Exhibit 34, Bielmeier represented that he spent $319,669 on construction.  That the contractor performed significant work is not in dispute, particularly inasmuch as the Welshes disbursed to Bielmeier the similar amount of $316,875 as draws that the building loan agreement contemplated after substantial completion of the foundation, roof and drywall.  But any claim related to the building loan was settled through the deed in lieu of foreclosure.  What remains in dispute are the separate advances for change orders.  As to this second set of advances, the Court has seen no evidence that any particular expenditure was incurred to satisfy any particular obligation under any particular change order.[1]  Thus, Bielmeier fails to establish a defense that any funds paid into the separate trust of each change agreement were ever used for their intended purpose.  We are left only with the plaintiffs' proof that they paid $129,554 on account of change orders and that those funds were

---

[1] At trial, the Court reserved decision on the plaintiff's hearsay objection to the admissibility of Exhibit 31, a document described as a job ledger report.  If this exhibit were to affect the outcome of this case, we would find that the defendant failed to show the predicate for its admission as a business record under Rule 803(6) of the Federal Rules of Evidence.  However, even if admitted, this document provides no proof that moneys were expended on account of any of the change order contracts.

commingled and spent on other projects. This breach of trust creates a debt that is a larceny under New York law and is therefore non-dischargeable under 11 U.S.C. § 523(a)(4).

Mr. and Mrs. Welsh further seek a determination of non-dischargeability with regard to their claim for four items of consequential damages. These include rent for substitute living space at a cost of $22,365; storage fees in the amount of $2,961; extra moving expenses of $2,848.04; and the value of time spent to resolve construction issues. In contrast to the treatment of advances under the change order contracts, section 79-a(1) of the New York Lien Law does not recognize consequential damages as a basis of larceny. The allegedly consequential damages may have resulted from a breach of contract, but they do not by themselves involve fraud, defalcation or embezzlement within the meaning of 11 U.S.C. § 523(a)(4). Nor do these consequential damages qualify as debts "for money, property, services, or an extension, renewal, or refinancing of credit" under 11 U.S.C. § 523(a)(2).

For the reasons stated herein, we find that the plaintiffs retain a non-dischargeable claim in the principal amount of $129,554. On this amount, they are entitled to such interest as may be allowed under the New York Lien Law. *See* N.Y. LIEN LAW § 77(3)(a)(i) (McKinney 2016). The parties are directed to consult with each other and to report to the Court regarding the calculation of interest. A judgment incorporating these terms will follow. If unable to reach consensus regarding interest, the parties may request a further hearing. Post-judgment interest will be allowed at the applicable federal rate. The remaining demands in the complaint are denied, but without prejudice to the assertion of an additional unsecured claim that is otherwise

subject to discharge.


      So ordered.


Dated: July 12, 2024                      ___/s/ Carl L. Bucki_____
      Buffalo, New York              Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y